UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-043-TBR

**BRANDON MARQUE HARRIS,**                                             **PLAINTIFF**

v.

**LT. RIVES, et al.,**                                                       **DEFENDANTS**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment, [DN 91]. Plaintiff has responded, [DN 96], and Defendants have replied, [DN 99]. Plaintiff has also filed a hand-written document labeled as a "Statement of Claim," in which he expressly asks the Court to grant summary judgment in his favor. [DN 118]. As a result, that filing has been construed as a Motion for Summary Judgment. Defendants have responded to that motion, and Plaintiff has replied. [DN 125; DN 128]. These motions are therefore fully briefed and ripe for review. For the reasons set forth below, the Court denies Defendant's Renewed Motion for Summary Judgment, [DN 91], and denies Plaintiff's Motion for Summary Judgment, [DN 118].

    **I.**     **BACKGROUND**

On September 5, 2018, Plaintiff was an inmate at the Christian County Jail. [DN 1, p. 5]. At around dinner time that evening, jail staff discovered that Plaintiff was in the wrong cell. [DN 64-8, p. 1 (Incident Report)]. As a result, Plaintiff was placed in a "law box" and advised that he would be moved to a cell after dinner trays had been served. *Id.* According to Plaintiff, after approximately one hour in the law box, he informed Deputy John Hurt that he had not yet eaten.

1

*See, e.g.*, [DN 118, p. 1]. Hurt told Plaintiff to shut his mouth and said he would get Plaintiff his food tray. *Id.* However, after another half hour or so, Plaintiff still had not received his food tray, so he attempted to get Hurt's attention by tapping on the cell window. *Id.* Hurt then became agitated and told Plaintiff to step away from the window. *Id.* Plaintiff states that he stepped away from the window but was "still pleading [his] case through the glass." *Id.*

At this point, Hurt called for backup on his walkie-talkie, and Sergeant Levi Robinson, Lieutenant Brian Rives, and Deputy J.L. Hendricks responded. *Id.* at 1–2. The deputies entered the law box cell, and Plaintiff was tased in his left forearm, left thigh/buttock area, and lower back area. *Id.* at 2. While Plaintiff was on the ground, he felt someone's hands rub over his eyes and felt an "extreme burning sensation." *Id.* Hurt also dropped his knee on Plaintiff's back. *Id.* Plaintiff states that he was ultimately handcuffed and the prongs from the tasers were "snatched" out of him. *Id.* at 3. He further alleges that he was "dragged down the hallway and strapped to a restraint chair for 6 hours with no medical attention." *Id.* He states that, during this time, water was poured over his face. *Id.* at 12. After roughly six hours in the restraint chair, he was moved to another cell. *Id.* at 3. At this point, he alleges he "was in extreme pain and had trouble walking" and "had to be helped by other inmates." *Id.*

The Incident Report presents a somewhat different set of facts. According to that report, Plaintiff "began to bang his tray on the table inside law box 502 and stated he was going to hit the first deputy that entered the cell." *See, e.g.*, [DN 64-8, p. 1]. Robinson then called for additional deputies before entering the cell. *Id.* When the other deputies arrived and attempted to enter the cell, "Robinson attempted to tase [Plaintiff] with only one probe making contact." *Id.* Plaintiff then threw his dinner tray at Hendricks "and swung at Dep. Robison," missing both deputies. *Id.* The deputies then attempted to place Plaintiff on the ground. *Id.* Rives attempted to

tase Plaintiff on the right side of his body and ultimately used a "drive stun" on his left calf. *Id.* Plaintiff continued to fight with the deputies, and Plaintiff was tased again. Plaintiff still "refuse[d] to give up his hands to deputies," so the deputies used "OC Aersol" (a pepper spray/foam) and tased Plaintiff again. *Id.*; *see also* [DN 64-7 (Taser Use Report); DN 111-3 (summary of incidents)]. Plaintiff was ultimately placed in hard restraints and taken to a restraint chair in another cell. *See, e.g.*, [DN 64-8, p. 1]. He was offered decontamination and accepted, and water was poured on his face to flush out the pepper spray/foam. *Id.*; *see also* [DN 64-4, p. 3]. According to the Incident Report, Plaintiff was "to remain in the restraint chair until he is willing to cooperate with jail staff." [DN 64-8, p. 1]. Plaintiff was released from the chair at 11:37 PM that evening, approximately six hours after the incident began, and was showered, dressed, and placed in a new cell. *Id.* at 2; *see also* [DN 64-4, p. 6].

Plaintiff alleges that he noticed blood in his underwear the following morning, and he was urinating blood. [DN 118, p. 3]. He filled out a sick call slip that same day, September 6, 2018, and he alleges that he filled out a sick call slip each day for the next six days. *See, e.g.*, [DN 64-6; DN 117-1, p. 1; DN 118 p. 3]. His September 6, 2018 sick call slip does not mention blood in his boxers or urinating blood; however, such conditions are reflected in a September 29, 2018 sick call slip and September 30, 2018 visit summary. [DN 117-1, pp. 36–37].

Plaintiff claims that he did not receive medical attention until September 19, 2018. [DN 118, p. 3]. However, Plaintiff's medical records indicate that he was evaluated by a nurse on September 7, 2018. *See* [DN 111-8, p. 1; DN 117-1, p. 2]. His complaint at that visit is described on the nurse's notes as follows: "I was tased muscles are tightened & my foot keeps locking up." *See, e.g.*, [DN 111-8, p. 1]. He was directed to take medications and follow up as needed. *See, e.g.*, *id.*

3

Plaintiff also notes other incidents that occurred shortly after the September 5, 2018 incident. For example, he alleges that he met with Colonel Donald Howard on September 6, 2018, who told Plaintiff that nothing was wrong with him. [DN 118, p. 3] When Plaintiff asked Howard how he knew that, Howard stated that he knew because he could look at him and tell. *Id.*

Plaintiff also alleges that he learned of a social media post in which Hendricks described the tasing incident "and how they made [Plaintiff] scream." *Id.* Plaintiff alleges that his then-fiancée called and spoke with Rives on or about September 10, 2018 to inquire "about [Plaintiff's] health and welfare," at which point she was told that "next time an incident occurs with [Plaintiff] we will kill him." *Id.* at 3–4. Plaintiff also received ridicule from Rives because of his Islamic faith. *Id.* at 4.

Plaintiff states that he was told that Christian County Jail does not have a grievance committee and that any grievances should be reported to Howard. *Id.* Plaintiff thereafter reported his issues to Howard, and as a result, he was called to Howard's office on or about March 6, 2019. *Id.*; *see also* [DN 1, p. 13]. Plaintiff claims that he asked Howard for a "1983 packet," at which point Howard tried to discourage him from filing a lawsuit. [DN 118, p. 4; DN 1, p. 13]. Plaintiff also claims that, "once informed of the jail's grievance procedure, . . . he wrote jailer Bradly Boyd twice" but never received a response. [DN 68]. He states that the jail's grievance policy "is taken as a joke among jail deputies." *Id.*

Meanwhile, Plaintiff claims, he continues to suffer from neck pain, leg pain, and pain in the upper chest. *See* [DN 118; DN 128]. He also claims that he suffers from mental health issues as a result of the September 5, 2018 incident, and he lives in fear of being harmed by jail deputies. *See* [DN 118; DN 128]. The medical records in evidence indicate that Plaintiff filled

4

out sick call slips at various points in late 2018 and early 2019 complaining of neck and back pain and requesting mental health services. *See, e.g.*, [DN 117-1; DN 118; DN 128].

Plaintiff, acting pro se, initiated this 42 U.S.C. § 1983 action on March 28, 2019 against Defendants Rives, Hendricks, Hurt, Robinson, and "Christian County Jail Staff," seeking both compensatory and punitive damages. [DN 1]. Pursuant to 28 U.S.C. § 1915A, the Court conducted an initial review of Plaintiff's Complaint, and dismissed Plaintiff's official-capacity claims and claims against unnamed "Christian County Jail Staff." [DN 10]. However, the Court allowed Plaintiff's Eighth Amendment excessive force claims to proceed against the remaining defendants in their individual capacities. *Id.*

Discovery ensued, and Defendants ultimately moved for summary judgment. [DN 63; DN 64]. The Court granted summary judgment in favor of Defendants, explaining that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a). [DN 73]. Specifically, the Court found that Plaintiff "was required to file a grievance in accordance with the Christian County Jail Policy and Procedure," but he "failed to provide any evidence that he complied, or even attempted to comply" with the jail's grievance procedure. *Id.* at 5.

Plaintiff then filed a Motion to Alter Judgment, alleging that he exhausted his administrative remedies by writing the two letters to Jailer Bradly Boyd. [DN 75, pp. 1–2]. He also alleged for the first time that he sent a third "grievance order" to Howard, which he attached to his motion. *Id.* at 3–4. That letter was titled "Col. Howard/Grievance," and it was dated February 23, 2019. *Id.* at 4. It states, in part,

> I am writting [sic] you this letter in concern of your dupties [sic]. As you already know that on Sept. 5th 2018 I was assualted, [sic] and Tased by deputies Lt. Rives, Dep. Hendricks, Dep. Hurt, and Sgt. Robertson. Lt. Rives even went so far as to

> tell my fiancée that he would kill me. I've written 2 grievances and sent them out since then. I haven't gotten a response to eaither [sic] one.

*Id.* at 607. In response, Defendants claimed that the Christian County Jail had no record of the alleged grievance, and they further noted that Plaintiff had produced no evidence that the grievance was ever filed. [DN 77]. The Court admitted that it held "serious concerns regarding the authenticity of the alleged grievance," but ultimately found that, regardless of its authenticity, the grievance would be untimely under the Christian County Jail Policy and Procedure manual. [DN 79, pp. 3–4]. Plaintiff's Motion to Alter Judgment was therefore denied. *Id.* at 4.

Plaintiff appealed. [DN 80]. The Sixth Circuit affirmed this Court's dismissal of the official-capacity claims and the Christian County Jail Staff, as well as the Court's denials of various motions to appoint counsel. [DN 87, pp. 1–2]. However, the Sixth Circuit vacated the Court's summary judgment decision. *Id.* at 2, 6–9. The Sixth Circuit explained that the defendants bear the burden of proof on exhaustion, and they "were required to come forward with evidence showing that the grievance procedures were in fact available to [Plaintiff]." *Id.* at 8 (citations omitted). The Sixth Circuit found that Defendants failed to satisfy their burden because the evidence they relied upon—namely, Plaintiff's conversation with Howard—did not actually clarify which grievance procedures were available to Plaintiff or whether Plaintiff had filed (or attempted to file) a grievance. *Id.* The Sixth Circuit therefore remanded the matter to this Court for further proceedings. *Id.* at 9.

Defendants have now filed their Renewed Motion for Summary Judgment, [DN 91]. Defendants reiterate their previous argument that Plaintiff failed to exhaust his administrative remedies, and further argue that he failed to show physical injury as required by the Prison Litigation Reform Act. [DN 91-1, pp. 4–7]. Defendants also argue that they are immune from suit under the doctrine of qualified immunity, and there is no evidence that they acted

6

maliciously and sadistically rather than in good faith. *Id.* at 7–12. Lastly, Defendants argue that Plaintiff has failed to make any factual allegation or offer any evidence in support of his punitive damages claim. *Id.* at 12. Plaintiff has responded, [DN 96], Defendants have replied, [DN 99], and the matter is therefore ripe for review.

Plaintiff has also filed a hand-written document labeled as a "Statement of Claim." [DN 118]. In that filing, Plaintiff restates his factual allegation and cites to various attached medical records. *Id.* He alleges that he continues to be treated for his injuries and is entitled to punitive damages, and further argues that Defendants have been dishonest, and he was not fighting with or being aggressive toward jail staff during the incident. *Id.* During a November 23, 2021 conference call, Plaintiff swore under oath that the factual allegations in his "Statement of Claim" were true and accurate statements, and the Court accepted those factual allegations as sworn statements.

Plaintiff concludes his "Statement of Claim" by stating, "For the above stated reasons in this motion Plaintiff is entitled to punitive damages. Plaintiff would like to further request that this Honorable Court Grant Summary Judgment on his behalf." *Id.* As a result of this request, the Court construes the filing as a Motion for Summary Judgment,[1] supported by Plaintiff's sworn statements, as noted above. Defendants have responded to that motion, and Plaintiff has replied. [DN 125; DN 128]. Accordingly, both motions are now ripe for review.

## II.   STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the

---

[1] The Court notes that a nearly identical filing was filed in May 2020 but was labeled as a "supplement" to Plaintiff's response to Defendants' first Motion for Summary Judgment. *See* [DN 76].

7

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

As noted above, the Court previously granted summary judgment in favor of Defendants on the grounds that Plaintiff failed to exhaust his administrative remedies. [DN 73]. To exhaust

8

his administrative remedies, an inmate at Christian County Jail must submit a grievance "in the form of a written statement . . . within 48 hours following the incident or condition giving rise to the incident." *See, e.g.*, [DN 64-5, p. 124 (Policy and Procedure manual, Section XII-600)]. The written grievance "shall state fully the time, date, and names of those Deputy Jailers and/or staff members involved, and pertinent details of the incident including the names of any witnesses." *Id.* "Such statement shall be transmitted promptly to the Grievance Officer without an interference." *Id.* The Grievance Officer then reviews the grievance and, if necessary, "conduct[s] a prompt investigation." *Id.* "Any inmate who submits a grievance will receive a response in 10 working days (excluding weekends and holidays) following the investigation of the grievance . . . ." *Id.* at 125. However, "[i]f the inmate does not receive a response to the grievance within 10 working days, then the grievance is deemed denied." *Id.* If the inmate is not satisfied with the disposition of the grievance (e.g., if it has been denied), "the inmate may appeal the decision to the Jailer" within forty-eight hours of receiving his or her response to the grievance. *Id.* The inmate should receive a response to the appeal within ten working days. *Id.* This grievance procedure is set forth in the Christian County Jail Policy and Procedure manual. *Id.* at 124–25. It is unclear from the record whether Plaintiff ever received a copy of this manual.

Plaintiff alleged that, "once informed of the jail's grievance procedure, . . . he wrote jailer Bradly Boyd twice" but never received a response. [DN 68]. Plaintiff has not provided copies of these letters, nor does he provide the date on which he sent the letters, or even allege that they were provided within the forty-eight-hour time period. The Christian County Jail had no record of the letters or any other related grievance. Plaintiff alleges that he did not receive a response to his letters; however, he does not allege that he appealed the de facto denial of his grievance to the Jailer, as suggested by the jail's grievance policy, nor is there any record of such an appeal.

9

Thus, the Court found that Plaintiff "failed to provide any evidence that he complied, or even attempted to comply" with the jail's grievance procedure. [DN 73, p. 5].

Plaintiff also argued that that the jail's grievance policy "is taken as a joke among jail deputies," [DN 68, p. 1], perhaps suggesting that the grievance procedures are ineffective and, in that sense, unavailable. However, because the Court found Plaintiff had not "even attempted to comply" with the jail's grievance policies, it did not need to consider whether those remedies were actually available to Plaintiff. *See Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) ("The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered those remedies unavailable." (citations omitted)); *Dicken v. Bush*, No. 20-10991, 2021 WL 4350535, *2 (E.D. Mich. Sept. 24, 2021) ("A plaintiff must attempt to use an administrative process before the court considers whether it is unavailable." (citing *Napier*, 636 F.3d at 223)). The Court therefore found that Plaintiff failed to exhaust his administrative remedies and granted summary judgment in favor of Defendants.

The Sixth Circuit vacated the Court's summary judgment decision. *See* [DN 87]. That Court concluded that Plaintiff "raised a genuine issue of fact about whether his letters to Boyd satisfied the exhaustion requirement or, alternatively, whether the Christian County Jail's grievance procedures were actually available to him." *Id.* at 8. As a result, "[D]efendants were required to come forward with evidence showing that the grievance procedures were in fact available to him." *Id.* (citations omitted). The Sixth Circuit found that Defendants failed to satisfy that burden. The matter was therefore remanded to this Court for further proceedings.

In the present motion, Defendants again argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. [DN 91-1, p. 5]. For support, they note that the February 23, 2019 grievance letter was untimely, and there is no record of any

other grievance, much less a timely filed one. *Id.* at 5–6. From this, Defendants conclude that Plaintiff did not comply with the grievance procedure. *Id.* However, they offer no additional factual or legal support—or even argument—to satisfy their burden of demonstrating that the grievance procedures were in fact available to Plaintiff. Given the Sixth Circuit's Order stating that Defendants previously failed to meet their burden of demonstrating that the jail's grievance procedures were available to Plaintiff, this Court cannot conclude that Defendants—without offering any new factual or legal argument—have now satisfied that burden. The Court will therefore deny Defendants' Renewed Motion for Summary Judgment, [DN 91], to the extent it seeks summary judgment for failure to exhaust administrative remedies.

### B. Physical Injury

Defendants also argue that "Plaintiff has failed to show physical injury as required by the Prison Litigation Reform Act." [DN 91-1, p. 6]. The Act states, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Sixth Circuit has indicated "that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimus* for an Eighth Amendment Claim to go forward." *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005).

The present case involves both physical and mental or emotional injuries, as alleged by Plaintiff. In his Complaint, Plaintiff describes his injuries as follows: "I suffer from severe neck and leg pain. I take a non [narcotic] pain med everyday. I also suffer from depression, [illegible] mental health from living in constant fear, and humiliation. I also have chest pains. I have to have my blood pressure checked every 2 days." [DN 1, p. 10]. In the "Relief" section of his

11

Complaint, he further states that he has "constant paint in [his] neck from Deputy Hurt dropping his knee on [his] neck" and "pain in [his] left leg from the prongs being pulled out improperly, and being denied medical treatment for over 10 days." *Id.* He states that he "live[s] in fear and humiliation every day and [has] to seek treatment from [sic] mental health." *Id.* He requests that his medical health bill be "reduced to its starting balance before the incident occurred on 9/5/2018," and he further requests $500,000 for "punitive and emotional damange [sic]." Plaintiff therefore alleges both physical and mental/emotional injuries, and he seeks compensatory and punitive damages for said injuries. Thus, under § 1997e(e), he must show a physical injury to support his claim of mental/emotional injury.

In their Renewed Motion for Summary Judgment, Defendants argue that Plaintiff has failed to show that Defendants' conduct caused an injury and, even if an injury resulted, it was merely a de minimis injury. [DN 91-1, pp. 6–7]. The Court disagrees. Plaintiff has provided medical records, as well as his own sworn statement, about the injuries he suffered as a result of the September 5, 2018 incident. For example, he alleges back and neck pain, and his medical records indicate that he has repeatedly sought and received medical attention for this pain. *See, e.g.*, [DN 117-1; DN 118; DN 128]. The Court therefore finds that Plaintiff has sufficiently demonstrated a physical injury in connection with his alleged mental and emotional injuries.

The Court further finds that the physical injury is not de minimus. On this issue, Defendants cite to *Jarriett v. Wilson*, in which the Sixth Circuit found that a prisoner's swelling, pain, and leg cramps were merely de minumus injuries. 162 F. App'x at 401. In that case, the prisoner-plaintiff had been confined in a small "strip cage" for several hours, during which time he stood on a "bad leg." *Id.* at 398. He alleged that, during his time in the cage, he was in pain and his leg became swollen "like a grapefruit." *Id.* He complained to the prison staff, but they did

12

not observe any swelling and did not contact medical services. *Id.* The following day, the prisoner was seen by medical staff but did not mention his bad leg or any issues with his legs. *Id.* at 398–99. He eventually brought a § 1983 claim for deliberate indifference, but the Sixth Circuit found that he suffered only de minimus injuries. *Id.* at 401. The Court explained that he suffered only from "swelling, pain, and cramps which were not serious enough to mention to medical staff the day of his release from the strip cage or two days later and which produced no medical findings at the point which Jarriett claims to have mentioned them to staff." *Id.* at 401.

The present case is distinguishable from *Jarriett*. Here, the evidence of record indicates that Plaintiff was evaluated by a nurse on September 7, 2018 after filling out a medical request form on September 6, 2018, the day after the tasing incident. *See* [DN 111-8, p. 1; DN 117-1, p. 2]. His complaint at that visit is described on the nurse's notes as follows: "I was tased muscles are tightened & my foot keeps locking up." *See, e.g.*, [DN 111-8, p. 1]. He was directed to take medications and follow up as needed. *See, e.g.*, *id.* Thus, unlike the plaintiff in *Jarriett*, this plaintiff's complaints were severe enough that he sought out and received medical attention in the days immediately following the incident. As noted above, Plaintiff's medical records also indicate that he continued to complain of debilitating pain over the next several months and continued to seek medical attention for his condition. *See, e.g.*, [DN 117-1; DN 118; DN 128]. This distinguishes Plaintiff's case from *Jarriett*, and from other cases cited in *Jarriett*, in which temporary pain, a mere bruise, and minor abrasions and contusions were deemed de minimus. *See, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 2005); *Luong v. Hatt*, 979 F. Supp. 481, 485–86 (N.D. Tex. 1997). Accordingly, the Court finds that Plaintiff's physical injuries are more than de minimus, and they satisfy the physical injury requirement of § 1997e(e).

13

The Court also notes that the failure to allege a sufficient physical injury would not necessarily bar Plaintiff's suit in its entirety, as Defendants suggest. Rather, § 1997e(e) applies only to claims of mental/emotional injury. *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (citing *Robinson v. Page*, 170 f.3d 747, 748 (7th Cir. 1990).) Thus, to the extent that Plaintiff has actionable claims for compensatory, nominal, or punitive damages premised on violations of his constitutional rights and not on alleged mental/emotional injuries, such claims would not be barred by § 1997e(e). *Id.* Regardless, the Court finds that Plaintiff has sufficiently demonstrated a physical injury under § 1997e(e) and will therefore deny Defendants' motion to the extent it seeks summary judgment on that ground.

### C. Qualified Immunity

Defendants next argue that they are entitled to qualified immunity. [DN 91-1, pp. 7–9]. The doctrine of qualified immunity "shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *Judd v. City of Baxter, Tennessee*, 780 F. App'x 345, 347 (6th Cir. 2019) (quoting *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015)) (internal quotation marks omitted). When considering a qualified immunity claim in the context of a motion for summary judgment in a § 1983 case, the Court must engage in a two-step analysis. *Id.* First, the Court asks whether "the facts . . . alleged or shown [by the plaintiff] make out a violation of a constitutional right." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). If the Court finds that a constitutional right was violated, it next asks whether that right was "clearly established" at the time of the alleged misconduct. *Id.* (citing *Pearson*, 555 U.S. at 232). The burden rests on the plaintiff to show that a clearly established

right was violated. *Id.* (citation omitted). At the summary judgment stage, the plaintiff must at least provide sufficient evidence to create a genuine issue of fact with respect to this issue. *Id.* (citation omitted). On this point, it is important to note that, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Id.* at 349 (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)).

With respect to the first question in the qualified immunity analysis—whether a constitutional right was violated—the Court finds that Plaintiff has satisfied his burden of demonstrating a genuine issue of fact. Plaintiff specifically alleges that Defendants violated his constitutional right to be free from excessive force. Defendants argue that they did not use excessive force and instead reasonably responded to Plaintiff's aggressive behavior, which allegedly included "brandishing" his food tray, throwing food, screaming at the deputies, "taking an aggressive stance," and punching and kicking. [DN 91-1, p. 8]. According to Defendants, the tasing, pepper spray/foam, and physical restraints were necessary to obtain Plaintiff's compliance. *Id.*; *see also* [DN 64-1; DN 64-2; DN 64-3; DN 64-4; DN 64-9]. Plaintiff, on the other hand, denies fighting with or being aggressive toward jail staff during the incident. *See, e.g.*, [DN 118, p. 1–2]. According to Plaintiff's sworn statements, he complied with the deputies' orders, and when they first entered his law box cell, he dropped to his knees and put his hands in the air "to show that [he was] not posing a threat." *Id.* at 1. When he moved his hands in front of his face to shield his face from the taser, he was tased repeatedly and pepper sprayed, and Deputy Hurt dropped his knee on Plaintiff's back. *Id.* at 1–2. Plaintiff expressly states that "he was NOT fighting with Defendants" and Defendants' allegation that he was aggressive is "dishonest and indeed frivolous." *Id.* at 12.

There is no video footage available to support or contradict either set of facts. *See Jennings v. Mitchell*, 93 F.App'x 723, 725 (6th Cir. 2004) (granting summary judgment to defendant correctional officers where "videotape squarely demonstrates that [the plaintiff] disobeyed repeated direct orders"). Rather, both parties have submitted sworn statements asserting two conflicting versions of the September 5, 2018 incident. *See* [DN 64-1; DN 64-2; DN 64-3; DN 64-4; DN 64-9; DN 118]. Where there is a disagreement about the facts, as in this case, the Court must review the evidence in the light most favorable to the Plaintiff and must make all reasonable inferences in his favor. *See Champion*, 380 F.3d at 900 (6th Cir. 2004). With this standard in mind, the Court finds that there exists a genuine dispute of material fact as to whether Defendants violated Plaintiff's constitutional right to be free from excessive force.

The Court next turns to the second step of the qualified immunity analysis—whether the constitutional right in question was clearly established at the time of the incident. Defendants do not deny that the constitutional right to be free from excessive force was well-established on September 5, 2018. Further, case law from this circuit had repeatedly affirmed that "the right to be free from excessive force is a clearly established" constitutional right. *Id.* at 902 (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)) (internal quotation marks omitted). The Sixth Circuit has also "consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right." *Id.* (citations omitted); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1348) (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where . . . the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."). The Court therefore finds that the constitutional right at issue in this case was clearly established at the time of the incident on September 5, 2018.

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citation omitted). In this case, there is a genuine dispute of material fact as to whether Defendants violated a clearly established constitutional right. Accordingly, the Court will deny the Renewed Motion for Summary Judgment, [DN 91], to the extent it seeks summary judgment on qualified immunity grounds.

### D. Alleged Good Faith Actions

Defendants also argue that they acted in good faith to restore discipline and such actions do not constitute excessive force in violation of the Eighth Amendment's cruel and unusual punishment clause. [DN 91-1, pp. 9–12]. As the Supreme Court has explained, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)) (internal quotation marks omitted). On this point, Defendants again argue that they "swiftly took reasonable action in response to [Plaintiff's] combative behavior." [DN 91-1, p. 9]. The "combative behavior" included throwing food and yelling at jail staff, according to Defendants. *Id.* at 10. When the deputies entered the law box cell, they "risked injury to themselves." *Id.* at 11. Based on these facts, Defendants conclude that "[t]he force used by officers against the Plaintiff to restore 'discipline and security' was not excessive." *Id.*

To support this assertion, Defendants cite to *Jennings v. Mitchell* as "an analogous case." [DN 91-1, p. 10]. In that excessive force case, the Sixth Circuit affirmed the district court's award of summary judgment to the defendant jail officers. 93 F. App'x at 725. The Sixth Circuit explained that "videotape squarely demonstrates that [the plaintiff] disobeyed repeated direct

17

orders," thus demonstrating that the jail officers' use of force was necessary to restore order. *Id.* In the present case, however, there is no video evidence of the September 5, 2018 altercation; rather, each party presents conflicting accounts of what happened that day, as noted above. *See* [DN 64-1; DN 64-2; DN 64-3; DN 64-4; DN 64-9; DN 118].

Defendants' reliance on *White v. Folwer*, 881 F.2d 1078 (Table) (6th Cir. 1989), is similarly unpersuasive. In that case, the Sixth Circuit affirmed the district court's award of summary judgment in favor of the defendant, a corrections officer who had pepper-sprayed the plaintiff-prisoner. The Sixth Circuit explained, "Under the circumstances of this case, although the plaintiff was shackled, the measures taken by the defendant to maintain or restore discipline simply do not arise to a level of wantonness in the inflicting of pain to warrant submitting the case to a jury." *Id.* at 1. However, the specific circumstances leading to that conclusion are not apparent from the Court's order in that case.

In other cases, summary judgment has been deemed inappropriate when there existed a genuine dispute of material fact with respect to whether the defendants acted in good faith to restore discipline. *See generally Peterson v. Descrochers*, No. 1:19-cv-145, 2021 WL 2593555 (W.D. Mich. Mar. 16, 2021); *Adkins v. Peede*, 5:17-cv-033-TBR, 2018 WL 3762975 (W. D. Ky. Aug. 8, 2018); *Smith v. Bigham*, No. 1:17-cv-128, 2018 WL 2100518 (S.D. Ohio May 7, 2018, *report and recommendation adopted*, 2018 WL 2735648 (S.D. Ohio June 7, 2018).

As the Court has already explained, the parties have submitted sworn statements outlining their conflicting accounts of what occurred on September 5, 2018. *See* [DN 64-1; DN 64-2; DN 64-3; DN 64-4; DN 64-9; DN 118]. Defendants argue that Plaintiff was aggressive and threatening and they used an appropriate amount of force to subdue him, [DN 64-1; DN 64-2; DN 64-3; DN 64-4; DN 64-9]. Plaintiff, on the other hand, contends that he was submissive and

complaint and such force was unnecessary and excessive. [DN 118]. Accordingly, there exists a genuine dispute of material fact as to whether Plaintiff was acting aggressively towards Defendants and disobeying commands, or whether he was calm and compliant. In other words, the parties dispute the facts material to this Court's excessive force analysis, and summary judgment is therefore inappropriate.

### E. Punitive Damages

Lastly, Defendants briefly argue that Plaintiff is "not entitled to punitive damages" because "[h]e has not made any factual allegation or put forth any evidence that would support his efforts for punitive damages." [DN 91-1, p. 12]. Punitive damages may be awarded "to punish a defendant whose conduct is particularly egregious and to deter others from acting the same away." *McCoy v. Alfrey*, No. 08-112, 2010 WL 4366120, *3 (E.D. Ky. Oct. 28, 2010). Such damages are available in excessive force cases. In fact, the Supreme Court has explained that, in the context of a § 1983 claim, "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Smith v. Wade*, 461 U.S. 30, 51 (1983).

The Court has already determined that there exists a genuine dispute of fact as to whether Defendants applied force in a good faith effort to restore discipline, or whether they did so maliciously or with reckless disregard for Plaintiff's rights. Accordingly, the Court will deny Defendants' Renewed Motion for Summary Judgment with respect to punitive damages. *See Wiley-Stiger v. O'Bannon*, No. 3:14-cv-295-DJH, 2016 WL 7422682, *10 (W.D. Ky. Dec. 22, 2016) (denying summary judgment on similar grounds).

## IV.     CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendants' Renewed Motion for Summary Judgment, [**DN 91**], is **DENIED**, and Plaintiff's Motion for Summary Judgment, [**DN 118**], is **DENIED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 2, 2021

cc: Counsel of Record
    Plaintiff, pro se